UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ANGEL TORRES and MANUEL TAVAREZ, on behalf
of themselves, individually, and on behalf of all others
similarly-situated,

                        Plaintiffs,

      -against-

BO-MELL ENTERPRISES, INC., and QUALITY AUTO
BODY & PAINTING CENTER, INC., and RICHARD
CISTERNAS, individually,

                       Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

Docket No.: 18-cv-8997

<u>Jury Trial Demanded</u>

ANGEL TORRES ("Torres") and MANUEL TAVAREZ ("Tavarez"), (together, where appropriate, as "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" as defined below), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for their Complaint against BO-MELL ENTERPRISES, INC. ("Bo-Mell"), QUALITY AUTO BODY & PAINTING CENTER, INC. ("Quality Auto"), and RICHARD CISTERNAS ("Cisternas"), individually, (together, where appropriate, as "Defendants"), alleges upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

1.       This is a civil action for damages and equitable relief based upon violations that the Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit.

1

12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); and (iv) any other claim(s) that can be inferred from the facts set forth herein.

2.     Defendants Bo-Mell and Quality Auto are two entities that operate as a single business enterprise and that together run a collision and autobody repair shop located at 1941 Jerome Avenue, Bronx, New York 10453 ("the Body Shop"), and Defendant Cisternas is the individual who oversees and exercises operational control over the Body Shop on a day-to-day basis. Plaintiff Torres worked for the Defendants at the Body Shop from approximately February 2008 until October 20, 2017 as a body man, while Plaintiff Tavarez has worked for the Defendants at the Body Shop from approximately 2000 to the present as a painter.

3.     On June 12, 2018, Plaintiffs and Defendants entered into a written agreement to toll the statute of limitations for all of Plaintiffs' claims arising under, *inter alia*, the FLSA, the NYLL, and the NYCRR, from June 12, 2018 through August 31, 2018. On July 30, 2018, the Plaintiffs and Defendants entered into a revised written agreement that extended the tolling of the statute of limitations for all of Plaintiffs' claims through September 30, 2018.

4.     Thus, as described below and as is relevant herein, from June 12, 2012 through the date of commencement of this action ("Relevant Time Period"), the Defendants willfully failed to pay Plaintiffs all of the wages lawfully due to them under the FLSA and the NYLL. Specifically, with respect to Plaintiff Torres, from the beginning of the Relevant Time Period until the end of his employment, and with respect to Plaintiff Tavarez, from the beginning of the Relevant Time Period until the end of 2016, Defendants required Plaintiffs to routinely work, and Plaintiffs did in fact work, in excess of forty hours each week, or virtually each week, but Defendants failed to compensate them at the statutorily-required overtime rate for any hours that they worked in a week

in excess of forty. Instead, Defendants paid both Plaintiffs a flat weekly wage that operated to cover only the first forty hours that they worked per week, and thus Defendants willfully failed to compensate Plaintiffs at any rate of pay, let alone at the statutorily-required overtime rate of one and one-half times their respective regular rates of pay, for all hours that they worked in excess of forty each week, in violation of the FLSA, the NYLL, and the NYCRR.  Additionally, Defendants violated the NYLL by failing to provide Plaintiffs, at first, with any wage statement on each payday, then later with accurate wage statements on each of their paydays.

5. Defendants paid and treated all of their non-managerial employees in the same manner.

6. Accordingly, Plaintiffs bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' violations of the FLSA. Plaintiffs bring their claims under the NYLL and supporting regulations on behalf of themselves, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-into this action.

**JURISDICTION AND VENUE**

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8. Venue is appropriate in this Court pursuant 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

**PARTIES**

9. At all relevant times herein, Plaintiff Torres worked for Defendants in New York, and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10. Throughout the Relevant Time Period, Plaintiff Tavarez worked and continues to work for Defendants in New York, and was and remains an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

11. Throughout the Relevant Time Period, Defendant Bo-Mell was and is an authorized foreign business corporation, organized and existing under the laws of the State of New Jersey, with its principal place of business located at 1941 Jerome Avenue, Bronx, New York 10453. Defendant Bo-Mell is registered with the New York State Department of State to receive service at the same address c/o George A. Mellides.

12. Throughout the Relevant Time Period, Defendant Quality Auto was and is a domestic business corporation, organized and existing under the laws of the State of New York, with its principal place of business also located at 1941 Jerome Avenue, Bronx, New York 10453.

13. Throughout the Relevant Time Period, Defendant Cisternas was and is the Chief Executive Officer of both Defendant Bo-Mell and Defendant Quality Auto. In that role, Defendant Cisternas has managed and overseen the day-to-day operations of the Body Shop, and was and remains ultimately responsible for all matters with respect to determining the Body Shop's employees' rates and methods of pay and hours worked. Furthermore, Defendant Cisternas had and exercises the power to hire and fire and approve all personnel decisions with respect to the Body Shop's employees.

14. Throughout the Relevant Time Period, Bo-Mell and Quality Auto had and have substantially identical, if not completely identical, management, business locations, equipment,

employment policies, customers, and/or ownership. They intermingled and intermingle financial books and records, jointly operated and operate the Body Shop, and shared and share managerial employees. As a result of the foregoing, a continuity of operations and/or ownership between Bo-Mell and Quality Auto existed and exists.

15. Throughout the Relevant Time Period, Defendants Bo-Mell and Quality Auto were and are "employers" within the meaning of the FLSA, the NYLL, and the NYCRR. Additionally, Defendants Bo-Mell's and Quality Auto's qualifying annual business exceeded and exceeds $500,000, and each Defendant was and is engaged in interstate commerce within the meaning of the FLSA as each employs two or more employees, and on a daily basis, uses products, supplies, and other materials in the course of its business, such as automobile parts and paint, much of which originates in states other than New York, the combination of which subjects the Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

16. Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime, as well as liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on their own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial employees who, during the applicable FLSA limitations period, performed any work for Defendants, and who consent to file a claim to recover damages for unpaid overtime compensation, as well as liquidated damages, which are legally due to them ("FLSA Plaintiffs").

17. Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid

the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

18. At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiffs and FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet Defendants purposefully and willfully chose and choose not to do so.

19. Thus, all FLSA Plaintiffs are victims to Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## BACKGROUND FACTS AS RELEVANT TO BOTH PLAINTIFFS

20. Defendants Bo-Mell and Quality Auto operate as a single enterprise and single employer as they have the same management and financial control, share the same location, and also share other resources, such as employees and inventory.

21. Together, Defendants Bo-Mell and Quality Auto operate a business in the Bronx, New York, which provides automobile repair services.

22. Defendant Cisternas was and is the Chief Executive Officer of both Defendant Bo-Mell and Defendant Quality Auto who runs, manages, and oversees the Body Shop on a daily basis.

23. Plaintiffs worked for Defendants exclusively in the Bronx, New York.

24. Defendants paid both Plaintiffs on a weekly basis, first only in cash, then beginning in or around August 2015, partly in cash and partly by check.

25. Throughout the Relevant Time Period, on each occasion when Defendants paid Plaintiffs, Defendants, at first, failed to provide Plaintiffs with any wage statement, let alone an

accurate one, and then from approximately August 2015 onward, Defendants failed to provide Plaintiffs with accurate wage statements, as the wage statements Plaintiffs received did not include, *inter alia*, the cash wages that Defendants paid to Plaintiffs.

26. Defendants treated Plaintiffs and FLSA Plaintiffs in the same manner described herein.

27. Defendants acted in this manner to maximize their profits and minimize their labor costs and overhead.

28. Each hour that Plaintiffs and FLSA Plaintiffs worked was for Defendants' benefit.

## INDIVIDUAL BACKGROUND FACTS

### *Plaintiff Torres*

29. In or around February 2008, Plaintiff Torres commenced his employment with the Defendants as a body man, a position which he held until October 20, 2017.

30. As a body man, Plaintiff Torres's primary duties included, *inter alia*, performing bodywork on the vehicles, both interior and exterior, as well as compounding, detailing vehicles, and completing electrical work.

31. From the beginning of the Relevant Time Period through October 20, 2017, the Defendants required Plaintiff Torres to work, and he did in fact work, six days per week, Monday through Friday from 8:00 a.m. until 5:00 p.m., and Saturday from 9:00 a.m. to 1:00 p.m. During each of his weekday shifts, Plaintiff Torres received a one-hour uninterrupted break, however, during his Saturday shifts, Plaintiff Torres did not receive any break, let alone an uninterrupted break. Accordingly, Plaintiff Torres worked a total of forty-four hours per week.

32. In exchange for this work, throughout the Relevant Time Period, Defendants paid Plaintiff Torres a flat weekly salary of $625.00, which was meant to cover on the first forty hours

that Torres worked in week. At first, Defendants paid Plaintiff Torres only in cash, then beginning in approximately August 2015 and continuing until the end of his employment, Defendants paid Plaintiff Torres $575.00 by check and $50.00 in cash each week.

33. By way of example only, during the week of November 11 through 17, 2012, Defendant required Plaintiff to work, and Plaintiff did in fact work, the following schedule:

    Sunday, November 11, 2012: off;

    Monday, November 12, 2012: 8:00 a.m. until 5:00 p.m.;

    Tuesday, November 13, 2012: 8:00 a.m. until 5:00 p.m.;

    Wednesday, November 14, 2012: 8:00 a.m. until 5:00 p.m.;

    Thursday, November 15, 2012: 8:00 a.m. until 5:00 p.m.;

    Friday, November 16, 2012: 8:00 a.m. until 5:00 p.m.;

    Saturday, November 17, 2012: 9:00 a.m. until 1:00 p.m.

Thus, Plaintiff Torres worked a total of forty-four hours this week. In exchange for his work, Defendants paid Plaintiff Torres a flat salary of $625.00, only in cash, which amounts to $15.63 per hour for his first forty hours of work only. Defendants did not pay Plaintiff Torres at any rate of pay, let alone his statutorily-required overtime rate of $23.44, for the hours that he worked during this week in excess of forty.

34. By way of a second example only, during the week of August 23 through 29, 2015, Defendants required Plaintiff Torres to work, and he did in fact work, the following schedule:

    Sunday, August 23, 2015: off;

    Monday, August 24, 2015; 8:00 a.m. until 5:00 p.m.;

    Tuesday, August 25, 2015: 8:00 a.m. until 5:00 p.m.;

    Wednesday, August 26, 2015: 8:00 a.m. until 5:00 p.m.;

    Thursday, August 27, 2015: 8:00 a.m. until 5:00 p.m.;

    Friday, August 28, 2015: 8:00 a.m. until 5:00 p.m.;

    Saturday, August 29, 2015: 9:00 a.m. until 1:00 p.m.

Thus, Plaintiff Torres worked a total of forty-four hours this week. In exchange for his work, Defendants paid Plaintiff Torres a flat salary of $625.00, $50 in cash and the rest by check, which amounts to $15.63 per hour for his first forty hours of work only. Defendants did not pay Plaintiff Torres at any rate of pay, let alone at his statutorily-required overtime rate of $23.44, for the hours that he worked during this week in excess of forty.

  35. At no point during the Relevant Time Period, including for the two weeks just detailed, did Defendants ever pay Plaintiff Torres an overtime premium of one and one-half times his regular rate of pay for any hours that he worked in excess of forty in a workweek.

### *Plaintiff Tavarez*

  36. Plaintiff Tavarez is a current employee of the Defendants who commenced employment in approximately 2000, as a painter.

  37. As a painter, Plaintiff Tavarez's primary duties include, *inter alia*, preparing vehicles to be painted, preparing the paint, and painting the vehicles.

  38. From the beginning of the Relevant Time Period through December 31, 2016, the Defendants required Plaintiff Tavarez to work, and he did in fact work, six days per week, Monday through Friday from 8:00 a.m. until 5:00 p.m., and Saturday from 9:00 a.m. to 1:00 p.m. During each of his weekday shifts, Plaintiff Tavarez received a one-hour uninterrupted break, however, during his Saturday shifts, Plaintiff Tavarez did not receive any break, let alone an uninterrupted

break.  Accordingly, Plaintiff Tavarez worked a total of forty-four hours per week during that time.  Plaintiff Tavarez stopped working on Saturdays after 2016.

39. In exchange for this work, throughout the entire Relevant Time Period, including after 2016 when he stopped working on Saturdays, Defendants paid Plaintiff Tavarez a flat weekly salary of $1,000.00, which was meant to cover only the first forty hours that Tavarez worked in a week.  At first Defendants paid Plaintiff Tavarez only in cash, then beginning in approximately August 2015 and continuing through the present, Defendants have paid Plaintiff $500.00 in cash and $500.00 by check each week.

40. By way of example only, during the week of October 6 through 12, 2013, Defendants required Plaintiff Tavarez to work, and he did in fact work, the following schedule:

    Sunday, October 6, 2013: off;

    Monday, October 7, 2013: 8:00 a.m. until 5:00 p.m.;

    Tuesday, October 8, 2013: 8:00 a.m. until 5:00 p.m.;

    Wednesday, October 9, 2013: 8:00 a.m. until 5:00 p.m.;

    Thursday, October 10, 2013: 8:00 a.m. until 5:00 p.m.;

    Friday, October 11, 2013: 8:00 a.m. until 5:00 p.m.;

    Saturday, October 12, 2013: 9:00 a.m. until 1:00 p.m..

Thus, Plaintiff worked a total of forty-four hours this week.  In exchange for his work, Defendants paid Plaintiff Tavarez a flat salary of $1,000.00, only in cash, which amounts to $25.00 per hour for his first forty hours of work only.  Defendants did not pay Plaintiff Tavarez at any rate of pay, let alone at his statutorily-required overtime rate of $37.50, for the hours that he worked during this week in excess of forty.

41. By way of a second example only, during the week of October 16 through 22, 2016, Defendants required Plaintiff Tavarez to work, and he did in fact work, the following schedule:

    Sunday, October 16, 2016: off;

    Monday, October 17, 2016; 8:00 a.m. until 5:00 p.m.;

    Tuesday, October 18, 2016: 8:00 a.m. until 5:00 p.m.;

    Wednesday, October 19, 2016: 8:00 a.m. until 5:00 p.m.;

    Thursday, October 20, 2016: 8:00 a.m. until 5:00 p.m.;

    Friday, October 21, 2016: 8:00 a.m. until 5:00 p.m.;

    Saturday, October 22, 2016: 9:00 a.m. until 1:00 p.m..

Thus, Plaintiff worked a total of forty-four hours this week. In exchange for his work, Defendants paid Plaintiff Tavarez a flat salary of $1,000.00, $500 in cash and $500 by check, which amounts to $25.00 per hour for his first forty hours of work only. Defendants did not pay Plaintiff Tavarez at any rate of pay, let alone at his statutorily-required overtime rate of $37.50, for the hours that he worked during this week in excess of forty.

42. At no point from the beginning of the Relevant Time Period through December 31, 2016, including for the two week just detailed, did Defendants ever pay Plaintiff Tavarez an overtime premium of one and one-half times his regular rate of pay for any hours that he worked in excess of forty in a workweek.

## **FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the FLSA*

43. Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

11

44. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

45. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

46. As also described above, Plaintiffs and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

47. Defendants willfully violated the FLSA.

48. Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

49. Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the NYLL and the NYCRR*

50. Plaintiffs and any FLSA Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51. NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

52. As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs and any FLSA Plaintiff who opts-into this action, are employees within the meaning of the NYLL and the NYCRR.

53. As also described above, Plaintiffs and any FLSA Plaintiff who opts-into this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

54. Plaintiffs and any FLSA Plaintiff who opts-into this action, are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

55. Plaintiffs and any FLSA Plaintiff who opts-into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

56. Plaintiffs and any FLSA Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57. NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

58. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action, are employees within the meaning of the NYLL.

59. As also described above, Defendants, on each payday, failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action, at first with any wage statements, and later with accurate wage statements containing all of the criteria required under the NYLL.

60. Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and any FLSA Plaintiff who opts-into this action, in the amount of $100.00 for each workweek after the violation occurred, up to a statutory cap of $2,500.00.

61. On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and any FLSA Plaintiff who opts-into this action, in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

## **DEMAND FOR A JURY TRIAL**

62. Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State Laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiffs and/or FLSA Plaintiffs for participation in any form of this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA

claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

  e. All damages that Plaintiffs and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

  f. Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

  g. Awarding Plaintiffs and FLSA Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and any other costs and expenses, and an award of a service payment to Plaintiffs;

  h. Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

  i. Pre-judgment and post-judgment interest, as provided by law; and

      j.   Granting Plaintiffs and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

Dated: Great Neck, New York
       October 1, 2018

           Respectfully summited,

           BORRELLI & ASSOCIATES, P.L.L.C.
           *Attorneys for Plaintiffs*
           1010 Northern Boulevard, Suite 328
           Great Neck, New York 11021
           Tel. (516) 248-5550
           Fax. (516) 248-6027

By:   _____
       CAITLIN DUFFY (CD 8160)
       ALEXANDER T. COLEMAN (AC 1717)
       MICHAEL J. BORRELLI (MB 8533)