# BORRELLI & ASSOCIATES

## P.L.L.C.

www.employmentlawyernewyork.com

| 655 Third Avenue | 910 Franklin Avenue |
|---|---|
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

November 11, 2019

*Via ECF*
The Honorable Valerie E. Caproni
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

   Re:  *Torres et al. v. Bo-Mell Enterprises, Inc. et al.*,
      *Docket No.1:18-cv-08997-VEC*

Dear Judge Caproni:

   As the Court knows, we represent the two named-Plaintiffs, Angel Torres ("Torres") and Manuel Tavarez ("Tavarez"), and the eight opt-in Plaintiffs, (all ten, where appropriate, as "Plaintiffs"), in this wage and hour collective action against Bo-Mell Enterprises, Inc., Quality Auto & Painting Center, Inc., and Richard Cisternas (collectively as "Defendants," and together with Plaintiffs as "the Parties"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). On October 10, 2019, the parties informed this Court that they had reached a settlement of this matter in principle. The Parties have now reduced their settlement to a formal written agreement ("Agreement"), which is attached hereto as **Exhibit A**.[1] We write now, on behalf of the Parties and in compliance with Your Honor's Minute Order of October 11, 2019, to explain the terms of the Parties' settlement with respect to the Plaintiffs' FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[2]

---

[1] On November 4, 2019, the Parties consented to the Magistrate Judge's jurisdiction for all purposes, ECF 33, approval of which is still pending before this Court.

[2] Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF # 32 at 2 n.1 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36

I.    **Procedural History, Plaintiffs' Claims, and Settlement Agreement Terms**

Prior to initiating this lawsuit, on October 1, 2018, named-Plaintiffs Torres and Tavarez attempted to resolve their wage and hour claims with Defendants - - two corporations that allegedly together operate a body shop in Queens, New York and its owner and day-to-day overseer - - by, through counsel, sending a demand letter, to which Defendants, through counsel, responded on June 28, 2018.  The Parties subsequently entered into a tolling agreement to toll named-Plaintiffs' claims between June 12, 2018 and September 30, 2018.  The Parties then attempted to negotiate, but after reaching an impasse, on October 1, 2018, named-Plaintiffs Torres and Tavarez commenced this action on behalf of themselves and all others similarly-situated alleging, *inter alia*, that Defendants failed to pay Plaintiffs overtime pay for four hours worked in excess of forty per workweek in violation of, *inter alia*, the FLSA. ECF 1.  That same day, Torres and Tavarez filed their respective consent to join forms, thereby opting-in to the FLSA § 216(b) collective. ECF 2 and 3.  On October 22, 2018, this Court referred this matter for mediation with this District's mediation panel. ECF 10.  Defendants subsequently filed their Answer on November 29, 2018, denying all material allegations. ECF 13.  On January 4, 2019, the District's Mediation office assigned Laurence Silverman, Esq. to serve as the mediator.

On January 24, 2019, the Parties stipulated to conditionally certify the FLSA collective pursuant to 29 U.S.C. § 216(b) and to distribute notice to the putative collective members, ECF 14, which this Court so-ordered, with modifications to the Parties' proposed notice, on March 25, 2019. ECF 15.  Plaintiffs' counsel thereafter modified the notice, had it translated into Spanish, and then distributed the modified notice to seventeen individuals, advising them of their right to join this case, and commencing a sixty-day opt-in period that concluded on June 21, 2019.  During that period, on April 26, 2019, May 13, 2019, May 17, 2019, May 28, 2019, May 30, 2019, June 10, 2019, June 13, 2019, and June 21, 2019, Plaintiffs Hugo Carrion ("Carrion"), Mirlee Lewis ("Lewis"), Roberto Duran ("Duran"), Juan Sencion Florentino ("Florentino"), Hector Reyes ("Reyes"), Gannis Selvon ("Selvon"), Jose Caldero ("Caldero"), and Keron Paisley ("Paisley"), filed their respective consents to join this action. ECF 16-24.

After the notice period ended, the Parties scheduled and held a mediation with Mr. Silverman on August 6, 2019, at which Plaintiffs Torres and Tavarez attended on behalf of the Plaintiffs.  Prior to the mediation session the Parties exchanged damage calculations, and at the mediation Defendants produced payroll records for the Plaintiffs.  These documents were used to facilitate the mediation by enabling the Parties to properly assess the strengths and weaknesses of their respective positions in terms of alleged liability and potential damages.  During the August

---

(E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement.").  The Parties, however, reference the settlement of their NYLL claims as is necessary to explain the breakdown of the fund between the individual Plaintiffs.

6th mediation, the Parties also discussed Defendants' financial assets and pending issues with the Internal Revenue Service ("IRS"), as well as, accordingly, Plaintiffs' ability to enforce and recover any potential judgment against Defendants. Thus, in an effort to bridge the gap and at the mediator's suggestion, Defendants agreed to produce additional documents concerning their financial condition to Plaintiffs' counsel, which occurred on September 6, 2019. Upon review, Plaintiffs' counsel confirmed that Defendants owed the IRS $991,165.57 in back taxes. Then, on October 2, 2019, the Parties participated in a telephonic mediation with Mr. Silverman and were able to get closer to a resolution. Two days later, on October 4, 2019, the Parties reached an agreement to settle Plaintiffs' claims in the total amount of $225,000.00 (hereinafter the "Settlement Sum"). This amount will be distributed as follows:

- **Torres**. The gross amount of **$13,408.36**, representing his pro rata allocation of the Settlement Sum, plus an additional **$5,000.00** as a service award, for a total of **$18,408.36**.

- **Tavarez**. The gross amount of **$18,188.02**, representing his pro rata allocation of the Settlement Sum, plus an additional **$5,000.00** as a service award, for a total of **$23,188.02**.

- **Carrion**. The gross amount of **$12,067.60**, representing his pro rata allocation of the Settlement Sum.

- **Lewis**. The gross amount of **$13,785.03**, representing his pro rata allocation of the Settlement Sum.

- **Duran**. The gross amount of **$9,204.62**, representing his pro rata allocation of the Settlement Sum.

- **Florentino.** The gross amount of **$14,250.86**, representing his pro rata allocation of the Settlement Sum.

- **Reyes.** The gross amount of **$13,098.19**, representing his pro rata allocation of the Settlement Sum.

- **Selvon**. The gross amount of **$22,909.90**, representing his pro rata allocation of the Settlement Sum.

- **Caldero.** The gross amount of **$10,595.93**, representing his pro rata allocation of the Settlement Sum.

- **Paisley.** The gross amount of **$11,888.22**, representing his pro rata allocation of the Settlement Sum.

- **Borrelli & Associates, P.L.L.C.** **$75,603.26** for their attorneys' fees and costs, comprised of **$74,586.37** (i.e., one-third of the net Settlement Sum) as attorneys' fees and **$1,016.89** in costs.

All payments are to be made November 18, 2019, to Plaintiffs' counsel, who will hold those funds in escrow pending the Court's approval of the settlement. Plaintiffs will receive half of their payment on a W-2 and subject to withholdings and their other half reported on a 1099. For the reasons explained below, Plaintiffs, on behalf of the Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances.

## II.    **The Agreement is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012); *see Mobley v. Five Gems Management Corp.*, 2018 WL 1684343, *3-4 (S.D.N.Y. Apr. 6, 2018) (applying *Wolinsky* factors). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *Id.* The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

### A.    *Range of Possible Recovery*

In this case, Plaintiffs all allege that they worked for Defendants at the body shop as non-managerial employees at various times during the relevant statutory period. In their respective roles, Plaintiffs all allege that Defendants paid them a flat weekly salary, partly in check and partly in cash, for working Monday through Friday from 8:00 a.m. to 5:00 p.m. with a one-hour lunch break, and Saturday from 8:00 a.m. to 1:00 without a break, for a total of forty-four hours per

week.  Plaintiffs claim that Defendants failed to compensate them at their respective overtime rates for the four hours of overtime that they worked each week.  All Plaintiffs' dates of employment during which they worked forty-four hours a week, and their weekly salaries within the three-year FLSA limitations period, running from when each Plaintiff joined the case are as follows: [3]  Torres: June 13, 2015 – October 20, 2017; $625.00; Tavarez: June 13, 2015 – December 31, 2016; $1,000.00; Carrion: April 26, 2016 – October 31, 2017; $750.00; Lewis: May 13, 2016 – October 31, 2017; $800.00; Duran: employment dates fell outside the FLSA period; Florentino: May 28, 2016 - August 6, 2019; $600.00; Reyes: May 30, 2016 - August 6, 2019; $550.00; Selvon: June 10, 2016 - August 6, 2019; $1,000.00; Caldero: June 13, 2016 – March 31, 2017; $700.00; and Paisley: June 21, 2016 – March 30, 2017; $800.00.

Based on the weeks that each Plaintiff claims to have worked overtime during the FLSA period and their respective rates of pay, Plaintiffs' counsel estimates that Defendants owe each Plaintiff an estimated maximum in unpaid overtime under the FLSA: Torres: $11,521.54; Tavarez: $12,150.00; Carrion: $7,143.75; Lewis: $9,188.57; Duran: $0.00; Florentino: $14,528.57; Reyes: $4365.00; Selvon: $24,685.71; Caldero: $4,365.00; and Paisley: $4,834.29, for a combined total $102,124.22.  Plaintiffs further contend that they are owed double those amounts as liquidated damages, for a total maximum FLSA recovery of $204,248.44.

Defendants, in contrast, strenuously oppose the scope and breadth of Plaintiffs' claims. Specifically, Defendants were and remain adamant that they properly paid Plaintiffs overtime for the hours that they worked over forty and argue that they supported that assertion with the payroll records that they produced during settlement.  If Defendants' position proved true, meaning if the trier of fact credited their records, Defendants' contention could ultimately reduce Plaintiffs' damages to zero.  Defendants further argued that they acted in good faith, which if proven, would result in Plaintiffs not being entitled to liquidated damages.

Thus, the range of recovery with respect to Plaintiffs' FLSA claims is between zero and $204,248.44.  And if liquidated damages were not awarded, Plaintiffs' maximum recovery under the FLSA would be reduced to $102,124.22.  Further, if Plaintiffs could not establish willfulness, thereby cutting a year off of their statutory limitations period, 29 U.S.C. § 255(a), their maximum FLSA damages would be $79,259.97.  Alternatively, based on their pro rata distribution under the Parties' Agreement, after deduction of attorneys' fees and expenses, the amount that Plaintiffs are receiving in their pockets, $139,396.74, provides approximately 136% of Plaintiffs' maximum FLSA overtime damages, or approximately 68% of their maximum FLSA damages when

---

[3] Named-Plaintiffs' Torres's and Tavarez's dates also include the 110 days that were tolled under the tolling agreement entered into with Defendants before litigation commenced.

liquidated damages are factored in.[4]  As such, the settlement reflects a reasonable compromise. *See De Jesus Galindo v. BLL Rest. Corp.*, 2018 WL 2768640, at *2 (S.D.N.Y. June 8, 2018) (finding a recovery of 38% of the alleged damages to be reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (finding that net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Sprtaro v. Govern. Employers Insur. Co.*, 2017 WL 1365123, at *3 (E.D.N.Y. Jan. 17, 2017) (approving settlement that provided the plaintiff with slightly half of his alleged unpaid overtime owed); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (finding net settlement of 25% of FLSA plaintiff's maximum recovery to be reasonable).

Additionally, Plaintiffs are requesting service awards on behalf of Plaintiff Torres and Tavarez in the amount of $5,000.00 each.  This is so because both Torres and Tavarez played vital roles from the inception of the action through its settlement.  Indeed, in addition to both Torres and Tavarez commencing the action under their respective names, both were extensively involved in pre-litigation discussions and pre-settlement discovery, namely by providing documents and investing hours of their time to discuss the documents during Plaintiffs' counsel's investigation of the matter.  Additionally, both Torres and Tavarez assisted counsel in communicating with the eight opt-in Plaintiffs, thereby ensuring that they were all aware of relevant details and procedures of this lawsuit.  Moreover, critically, Torres and Tavarez each participated in the initial mediation on August 6, 2019, as well as the subsequent discussions that ultimately led to the resolution of this matter in principle.  Based on their roles, without which settlement would not have been possible, a modest $5,000.00 to each as a service award is well within the range of service awards approved in FLSA collective action only cases. *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (citing *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *18 (S.D.N.Y. Sept. 30, 2015)) (collecting cases on FLSA service awards).

### B.    *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, full written discovery and depositions would commence, with the prospect of summary judgment motions by either side at the close of discovery likely.  Thereafter, a trial on the merits for some or all of the claims in this case was virtually guaranteed given the Parties' hotly disputed issues of material fact.

At bottom, even if successful at both the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum, particularly

---

[4] The proportion of each Plaintiff's respective recovery is based on his individual total damages, inclusive of unpaid overtime, statutory penalties, and interest under both the FLSA and the NYLL. Plaintiffs' counsel estimates that Plaintiffs' maximum potential recovery under both the FLSA and the NYLL is $717,712.18, and therefore Plaintiffs' recovery under the Agreement, after paying their counsel, amounts to 19.4% of their total potential damages.

when that amount exceeds their maximum FLSA recovery even after paying their attorneys' fees. Plaintiffs all understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendants are now offering.  Indeed, in light of Defendants' back taxes owed to the IRS, had they fully prevailed on their claims at trial, Plaintiffs face substantial risk of not being able to collect on a judgment.[5]  To that end, courts have recognized that eventual trial practice may "meaningfully decrease possible recovery for plaintiffs." *Flores v. Mama Lombardi's of Holdbrook, Inc*., 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).  Thus, the amount recovered under the settlement is especially fair and reasonable to Plaintiffs.

## C. *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place through the aid of a skilled, District-appointed panel mediator, with the aid of informal discovery being exchanged to inform their discussions.  There was no fraud or collusion here. *See Siddiky v. Union Square Hospitality Grp. LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citing *Romero v. La Revise Assocs. L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014)) (applying presumption of procedural fairness where negotiations took place with experienced mediator).

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it.  For instance, the Parties have included a mutual release, and Plaintiffs' release is limited to any wage and hour claims that Plaintiffs have or may had had against Defendants, as well as their related entities and principals, and therefore does not fall into the category of releases that are so broad and encompassing so as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks,* 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015).  Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 2015 WL 1455689, at *5); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks,* 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

---

[5] Indeed, since entering into the Parties' Agreement, the IRS has levied all of Defendants' bank accounts and the Parties have agreed that Defendants' deadline to fund the settlement will be extended to November 18, 2019, to allow Defendants additional time to raise the necessary capital.

**D.     The Requested Attorneys' Fees and Costs are Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

With respect to legal fees here, Plaintiffs' counsel's requested attorneys' fee of $74,586.37 represents one-third of the total net settlement amount, after deducting $1,016.89 for out-of-pocket costs. Courts in this Circuit routinely approve attorneys' fee awards at a rate of one-third of the total settlement. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 2019 WL 2219680, at *5 (2d Cir. May 23, 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) (stating that "we have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *see also Cregg v. Firstservice Residential N.Y., Inc.*, Case No. 15-cv-3876-LB, Dkt. No. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *See Fresno County Employees' Retirement Assoc.*, 2019 WL 2219680, at *6 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014). Indeed, as recognized by courts within this Circuit, "[c]ourts regularly award lodestar multipliers from two to six times lodestar." *Johnson v. Brennan*, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."). Additionally, in awarding attorneys' fees, courts within this Circuit also recognize "the importance of encouraging the swift resolutions of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." *Pinzon v. Jony Food Corp.*, 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving attorneys' fees with a multiplier of 5.23); *see also Hyun v. Ippudo USA Holdings et al.*,

2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010) ("In this case, where the parties were able to settle relatively early and before any depositions occurred, [], the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement.'")).

In order to calculate the lodestar, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). If the Firm were seeking a fee based on its lodestar, the managing partner, Michael J. Borrelli, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, the Firm's senior associate, the undersigned, who handled the mediation and subsequent negotiations associated with this case and who possesses twelve years of experience, would seek $295 per hour, and the Firm would seek reimbursement for its other appearing and non-appearing associates at a rate of $225, and its paralegals at the rate of $125 per hour. Courts routinely approve these rates in similar cases. *See, e.g.*, *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *see also Argudo v. Maletona Corp. et al.*, 1:18-cv-06017-ER, D.E. 15, 16 (S.D.N.Y. Apr. 18, 2019) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 for Mr. Coleman, $295.00 for the undersigned, Caitlin Duffy, $200.00 non-appearing associates, and $125.00 for paralegals).

The Firm calculated its lodestar in this case to be $31,256.25 to date. Thus, the Firm's requested fee of $74,586.37 represents a lodestar multiplier of 2.39. Plaintiffs' counsel's contemporaneous billing records are annexed hereto as **Exhibit B**.

Lastly, with respect to expenses, the Firm is seeking reimbursement of $1,016.89 in out-of-pocket expenses, comprised mainly of the filing fee ($400.00), translation services for the notice of pendency ($456.00), and travel reimbursement for the translator who accompanied counsel at mediation ($18.50). The Firm also expended an additional $142.39 in Westlaw, Pacer, and postage expenses on this matter. Plaintiffs' counsel's receipts and invoices that it has are annexed hereto as **Exhibit C**.[6]

---

[6] While not reflected on the invoice for translation services, Plaintiffs' counsel represents that it paid this invoice in the amount of $456.00 on April 17, 2019. Moreover, there are certain expenses for which Plaintiffs' counsel does not have corresponding receipts. These entries include charges for filing the Complaint in this matter, Westlaw and Pacer for legal research, and postage. In spite of the fact that there are no receipts for these charges, Plaintiffs' counsel represents that these expenses have been necessarily incurred in this case and the services for which fees have been charged were actually and necessarily performed.

## III.  <u>Conclusion</u>

For the forgoing reasons, Plaintiffs, on behalf of the Parties, respectfully request that the Court approve the settlement of Plaintiffs' FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement.  The Parties have attached a proposed order of dismissal as an exhibit to the Parties' Agreement for the Court's convenience.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Caitlin Duffy, Esq.
*For the Firm*

To:    All counsel of record (*via ECF*)